**FILED**
VANESSA L. ARMSTRONG

AO 91 (Rev. 11/11) Criminal Complaint

## UNITED STATES DISTRICT COURT
### for the
### WESTERN DISTRICT OF KENTUCKY

AUG 2 1 2015

U.S. DISTRICT COURT
WEST'N. DIST. KENTUCKY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| v. | ) | |
| | ) | Case Number  3:15-MJ-368 |
| **STEPHEN POHL** | ) | |

### CRIMINAL COMPLAINT

I, Dan Jackman, a Detective with the Louisville Metro Police Departments's Crimes Against Children Unit, the complainant in this case, state the following is true to the best of my knowledge and belief.

In or about 2015, in the Western District of Kentucky, Jefferson County, Kentucky, Stephen Pohl violated 18 U.S.C. § 2252A(a)(5)(B) when he knowingly accessed with intent to view material that contained an image of child pornography that had been transported using any means or facility of interstate and foreign commerce and in and affecting interstate and foreign commerce by any means, including by computer. Namely, he used a Dell Optiplex Desktop (office) and Lenovo Laptop (rectory) to access the Internet and view images of child pornography.

This criminal complaint is based on these facts:

X        Continued on the attached sheet

_Complainant's signature_
Dan Jackman
Detective, Louisville Metro Police Department CACU
_Printed name and title_

Sworn to before me and signed in my presence.

Date: August 21, 2015

_Judge's Signature_

DAVE WHALIN
United States Magistrate Judge
_Printed Name and Title_

City and State: Louisville, Kentucky

JEK:JEL

## AFFIDAVIT

I, Dan Jackman, being duly sworn, state as follows:

1. I am a detective with the Louisville Metro Police Department's Crimes Against Children Unit and routinely investigate child exploitation cases where computers or other means of electronic communications are used. I have successfully completed over 40 individual child abuse training sessions, most of which focus on Internet investigations, since being assigned to the CACU. I hold a Bachelor of Arts degree in Justice Administration from Northern Kentucky University. I have been certified by the Department of Criminal Justice Training at Eastern Kentucky University to instruct in the areas of criminal investigations, crimes against children investigations, and Internet crimes against children. I have also been certified to teach identifying and seizing electronic evidence from the National White Collar Crime Center. As a police detective deputized by the United States Marshals Service, I am authorized to investigate violations of laws of the United States (including those related to child sexual exploitation, 18 U.S.C. §§ 2251 et seq.), and to execute warrants issued under the authority of the United States.

2. Affiant was recognized as an opinion witness in United States District Court for the Western District of Kentucky at Louisville during a trial held in August 2009. The case dealt with an individual making arrangements over the Internet to meet a 14-year-old female for sex as well as attempted production of child pornography.[1] Affiant has investigated more than 650 cases involving child pornography, sexual enticement of minors over the Internet, obscenity directed to minors, and other investigations involving the sexual exploitation of children. I have gained vast knowledge regarding how to conduct such investigations through training in seminars, conferences, classes, and personal experience working these types of investigations in an ongoing basis.

3. Affiant is familiar with the information contained in this Affidavit based upon the investigation I have conducted and based on my conversations with other law enforcement officers who have engaged in numerous investigations involving child pornography. Because this Affidavit is being submitted for the limited purpose of securing a Criminal Complaint and Arrest Warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only those facts that I believe are necessary to establish probable cause to believe that Stephen Pohl violated 18 U.S.C. § 2252A(a)(5)(B) when he knowingly accessed with intent to view material that contained an image of child pornography that had been transported using any means or facility of interstate and foreign commerce and in and affecting interstate and foreign commerce by any means, including by computer. Specifically, during 2015, while in Jefferson County, Kentucky, Pohl used two computers -- a Dell Optiplex Desktop (office) and Lenovo Laptop (rectory)to access the Internet and view images of child pornography.

---

[1] All references to child pornography contained in this Affidavit are made in reliance on the definition set out in 18 U.S.C. § 2256(8)(A).

4. Affiant requested and obtained two federal Search Warrants for the personal office and living spaces of Stephen Pohl[2] located at 7813 Shelbyville Road, Louisville, Kentucky 40223 and 117 Arterburn Drive, Louisville, Kentucky 40222. Law enforcement officials executed the Search Warrants on August 12, 2015. Law enforcement officials seized a Dell Optiplex Desktop (office), a Lenovo Laptop (rectory) and removable digital storage materials.

5. Affiant received a report that a 10 year old boy, hereafter referred to as "V1", was inappropriately photographed by an individual at Saint Margaret Mary School. Det. Jackman spoke with the mother of V1 and arrangements were made to interview V1 at their residence to obtain more information about the incident. Affiant met V1 and his parents at their residence. Det. Jackman interviewed V1 while his parents were in a different room. V1 explained that he attends Saint Margaret Mary School where he participates in after school programs.

6. V1 explained that while he was attending an after school club, Stephen Pohl, A/K/A Father Steve, attended meeting. V1 stated that Father Steve wanted to take a picture of the group. The group of students was taken outside near a garden at the Rectory.[3] V1 said that Father Steve took one big group picture with his cell phone. While being escorted back to the meeting space of club, Father Steve took V1 aside and asked for an individual picture. V1 agreed and was told to sit on some stairs leading to the school. The first two pictures taken were of V1 in a normal sitting position with his hands down to his side on the stairs. After taking those pictures, Father Steve told V1 to place is hands on his knees and move his legs apart. Father Steve then took two additional pictures of V1. V1 then returned to the rest of the group in their meeting space. V1 stated that he was not aware of any other child who was asked for individual pictures by Father Steve. V1 described his phone as an "Apple phone in a Lifeproof case" black in color. When asked how he felt as Father Steve was taking the last two pictures, V1 said, "this is weird." V1 added that he had been inside Father Steve's house in May 2015. He stated that Father Steve has a bedroom and an office upstairs. In the office Father Steve has a black and grey "newer" laptop computer on a desk.

7. After interviewing V1, Det. Jackman spoke with his parents. The mother, hereafter referred to as "VM1", explained how she picks up her children from after school activities and routinely asks how school and various clubs went for the day. VM1 stated that when she asked those questions, V1 immediately told her about Father Steve taking his pictures and how he felt weird about the experience. V1 informed her of the one group photo and four individual pictures that were taken.

---

[2] Pohl is the Pastor of Saint Margaret Mary Catholic Parish. The Search Warrants covered parish properties, but, as noted above, were limited to areas under Pohl's personal control. Similarly, subsequent searches of digital items seized during the course of the search were limited in scope to materials pertaining to child sexual exploitation and child pornography.

[3] The Rectory is the residence for a parish priest or other clergy.

8.  The following day, VM1 contacted Father Steve via email to request a copy of the pictures he had taken the previous day.  Father Steve replied with a group picture of the Club and one picture of V1.  The picture of V1 was the first image taken with him sitting in a normal position and his arms down to his side.  VM1 sent another email to Father Steve requesting all the pictures he had taken of V1.  No response was received.

9.  Shortly thereafter, VM1 and her husband hereafter referred as "VF1"were shopping and discussing the images Father Steve had taken.  While out shopping, VM1 sent a third email to Father Steve again requesting all the pictures that were taken of V1.  VM1 did not receive a response to the third email.  VM1 next called Father Steve and left a voice message requesting the photos and a face-to-face meeting with him to discuss the pictures.  Father Steve called VM1 stating the he too was out shopping and that pictures had been deleted.  Moments later while checking out of the store, VM1 and VF1 saw Father Steve walk into the store.

10.  The parents noticed that Father Steve had his cell phone is his front shirt pocket and approached him.  VF1 asked Father Steve if he had his cell phone with him.  According to VF1, Father Steve was "shaking like a leaf" and nervous as he handed the cell phone to him.  VF1navigated the cell phone and located the pictures of V1.  While looking for the pictures of V1, VF1 saw several photos of other young boys posed in the same manner as V1.  VF1 stated that he recognized one of the boys as a student at Saint Margaret Mary School (hereafter be referred to as "V2").

11.  VF1 told Father Steve how these types of pictures were highly inappropriate.  VF1 advised that Father Steve stated that the boys chose to stand in those poses to show their muscles.  VF1 then had Father Steve email him the images of V1.  Later that day, Father Steve called VF1 and asked if he could meet with them to apologize to V1 and the family.  VF1 told Father Steve that they did not wish to meet as it may make V1 feel uncomfortable.

12.  VF1was familiar with the parents of V2 and called them the following day.  VF1 explained the incident with V1 and how he saw similar pictures of V2.  VF1 provided Affiant with their contact information.

13.  After the interview, Det. Jackman was provided with a copy of the emails exchanged and pictures taken of V1.  Below is a description of the three recovered images of V1:[4]

---

[4] The images of V1 have been shown to the reviewing Magistrate Judge and will be maintained in a secure manner by Affiant.  Based on Affiant's specialized training and experience, the photographs "posed" by Pohler constitute child erotica. [4]"Child erotica," as used in this Affidavit, includes images, materials or items that are sexually arousing to certain individuals but which do not rise to the level of child pornography.  For example, "child erotica" [includes] "items such as a person may collect ... such as childrens' [sic] underwear, just pictures

Picture 1
V1 can be seen sitting on a set of concrete steps leading up to a red brick building with a black door. He is wearing Saint Margaret Mary hooded sweatshirt, basketball shorts, and facing the camera. His hands are down to his side under his legs and his knees are near each other.

Picture 2
V1 can be seen sitting on a set of concrete steps leading up to a red brick building with a black door. He is wearing Saint Margaret Mary hooded sweatshirt, basketball shorts, and facing the camera. His hands are wrapped around his knees and his legs have been spread open. One can clearly see up the child's shorts and underwear.

Picture 3
The same pose as in Picture 2, but the camera has been focused on the child's genitals.

14. Affiant visited the residence of V2 and interviewed him regarding the pictures taken of him by Father Steve. V2 advised that Father Steve had taken pictures of him on two occasions. V2 explained the first time Father Steve took his picture he was with his older brother. The pictures were taken in the school gym and only Father Steve and the boys were present. Father Steve took pictures of them together, then individual pictures of V2.

15. The second time Father Steve took V2's picture was while he was in school in May 2015. V2's class was at recess when Father Steve approached him and asked for a picture. V2 agreed and was taken to the school gym where he was posed on the bleachers. Only V2 and Father Steve were in the gym when the pictures were taken. V2 was posed holding a volleyball on top of his knee, then with the volleyball between his knees. V2 stated Father Steve took approximately 15 pictures of him. After the pictures were taken, V2 walked back to recess.

16. During the course of executing the Search Warrants, Affiant and another law enforcement official conducted an interview with Pohl. Pohl admitted to taking the photographs that were the catalyst for seeking the Search Warrants. Pohl admitted to posing the child in specific ways and, when asked about it, he stated he had posed the child in that manner to "make him look more manly." Pohl advised Affiant that he had deleted the photographs of the child in question. However, during the preliminary examination of Pohl's computers, Affiant found more than 150 photographs Pohl had

---

of children, young children that are clothed ... that may have some sexual satisfaction to the individual that the collection belongs to." *United States v. Caldwell,* 1999 WL 238655 (6th Cir. (ED KY) April 13, 1999).

taken of school children, including the photographs of the child (VM1) that Pohl claimed to have deleted. The vast majority of the photographs were of children alone. A few were group photos. None of the photographs of the Saint Margaret Mary school children constitute child pornography.

17. Pohl stated he had taken lots of photographs of children at the school that he submitted to the parish's Communication Director to be used on the school's FaceBook page. Affiant reviewed the school's FaceBook page. None of the photographs Pohl had taken of the school children are posted on the FaceBook page. Moreover, Affiant contacted the parish Communication Director and asked about submissions of photographs by Pohl. The Communication Director advised that Pohl had submitted one photograph of a school club in May 2015 for use on the FaceBook page. He had not, however, submitted any photographs of individual children.

18. A preliminary forensic examination of the hard drives from the computers taken from both Pohl's office and residence revealed the presence of child pornography. The examination has not shown downloading of the images. Rather, the images appear in the computers' cache. Affiant knows from specialized training that downloadable images on the Internet are automatically stored to a computer's cache when a person visits a URL on the Internet. Within the context of computers, a cache is a component that stores data so future requests for that data can be served faster. Images recovered from the computer's cache do not reflect that the user downloaded or otherwise purposely stored the images. Rather, the presence of images in the cache is an indication of accessing and viewing materials.

19. Before search warrant execution began, Affiant asked Pohl if law enforcement officials would find anything shocking or alarming on his computer. Initially, he stated no. Later, Pohl asked to speak with Affiant privately. Pohl advised that there were some items on his computer that probably should not be there. He said that he went to some websites that were inappropriate but would not elaborate on what topics or web sites he visited on the Internet.

20. A sampling of the child pornography images[5] recovered from the computers' cache described below:

    a. Still image of little boy, approximately 6-8 years of age. He is totally nude. The child is sitting on a large pink ball with his legs spread apart. His penis and scrotum are clearly visible.

---

[5]The images described above as well as additional images of child erotica and child pornography have been shown to the reviewing Magistrate Judge and will be maintained in a secure manner by Affiant.

5

b.  Still image of three individuals – an adult female, female child (approximately 7-9 years of age) and male child (approximately 5-7 years of age). The children are totally nude. The three are in a bathroom. The male child and adult female are using paint to paint on the female child's body. The female child's arms are above her head, bent at the elbows. The genital areas of both children are clearly visible.

c.  Still image of a little boy (approximately 6-8 years of age). He is totally nude, sitting in a chair with his left leg bent and his foot resting against his right thigh. The child's penis and scrotum are clearly visible. He is holding something in his hands.

d.  Still image of young male (approximately 14-16 years of age). He is nude and bending over. The photograph is taken from behind. The boy is holding a volleyball just above his buttocks. The boy's anus, scrotum, and penis are clearly visible.

e.  Still image of two nude children in a bathtub. The older child (male – approximately 6-8 years of age) is lying on his back with his legs spread apart. His penis and scrotum are clearly visible. The younger child (late infant – early toddler and sex undetermined) is sitting between the older child's legs holding a ball in the air.

f.  Still image of male child (approximately 10-12 years of age). He is sitting with his knees drawn to chest and legs apart. The child is wearing some type of mesh undergarment and no other clothes. His scrotum is clearly visible as is the outline of his penis.

g.  A still image of four individuals (two adults and two children). All are nude, with full frontal nudity of the adult male, female child, and male child. The adult female's genital area is blocked by a piece of furniture. The adult male has red hearts painted on this body, including an outline around his pubic area. The female child is painted with yellow/black horizontal stripes on her body and a black ring around her left eye. The male child is holding a book/pamphlet – but otherwise nude. The children are approximately 7-9 (female) and 5-7 (male) years of age.

## CONCLUSION

Based upon all of the information set forth herein, your Affiant respectfully submits that there is probable cause to believe that in or about 2015, while in Jefferson County, Kentucky, in the Western District of Kentucky, Stephen Pohl violated 18 U.S.C. § 2252A(a)(5)(B) when he knowingly accessed with intent to view material that contained an image of child pornography

that had been transported using any means or facility of interstate and foreign commerce and in and affecting interstate and foreign commerce by any means, including by computer.  Namely, he used a Dell Optiplex Desktop (office) and Lenovo Laptop (rectory) to access the Internet and view images of child pornography.

FURTHER AFFIANT SAYETH NOT.

_____

Dan Jackman

Detective, Louisville Metro Police Department

Subscribed and sworn to before me this __21st__ day of __August_____, 2015

_____

DAVE WHALIN

United States Magistrate Judge

7